UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL G.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] <br><br> Defendant. | Case No.: 21cv522-MMA (MSB) <br><br> **REPORT AND RECOMMENDATION** <br> **[ECF NO. 21]** |

This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On October 30, 2020, Plaintiff Rafael G. filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  See https://www.ssa.gov/agency/commissioner.html (last visited on March 16, 2022).  The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the defendant in this action.  See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (providing that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant.").

("Commissioner") denying his application for a period of disability and disability insurance benefits. (See ECF No. 1.)

Now pending before the Court is the parties' "Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security." (See ECF No. 21.) For the reasons set forth below, the Court **RECOMMENDS** that judgment be entered affirming the decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

On April 25, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning April 10, 2017. (Certified Admin. R. ("AR") 176-77, ECF No. 13.) After his application was denied initially and upon reconsideration, (see AR 94-104), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 105-06.)

On July 16, 2020, ALJ James Delphey held an administrative hearing. (AR 33.) Plaintiff appeared at the hearing with counsel, and both Plaintiff and a vocational expert ("VE") testified. (AR 33-68.) In a written decision dated September 24, 2020, the ALJ denied Plaintiff's application and found him not disabled. (AR 16.)

The ALJ's decision became the final decision of the Commissioner on November 24, 2020, when the Appeals Council denied Plaintiff's request for review. (AR 5); see also 42 U.S.C. § 405(g). This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 10, 2017, the alleged onset date. (AR 21.) At step two, the ALJ found Plaintiff had the following severe impairment: incipient degenerative disc disease of the cervical and lumbar spine following a postindustrial accident affecting his neck and back. (Id.) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met

///

2

21cv522-MMA (MSB)

or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 22.)

Next, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to do the following:

> perform medium work as defined in 20 C.F.R. § 404.1567(c)[3], except: he can occasionally climb ramps, stairs or ladders; never climb ropes or scaffolding; frequently balance, kneel, stoop, or crouch; occasionally crawl; and is restricted to frequent overhead reaching bilaterally.

(Id.)

At step four, the ALJ found that Plaintiff could perform his past relevant work as an instrument technician as generally performed. (AR 26.) The ALJ then proceeded to step five of the sequential evaluation process. The ALJ noted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as dining room attendant, counter supply worker, and laundry laborer. (AR 27.) These occupations require the ability to perform medium work. (See AR 27.) Based on this testimony and the finding regarding Plaintiff's ability to perform past relevant work, the ALJ found Plaintiff was not disabled. (Id.)

### III.   DISPUTED ISSUES

The parties have briefed two issues in their joint motion, which Plaintiff asserts are grounds for reversal:

1. Whether the ALJ properly evaluated the opinion of Plaintiff's treating doctor, (ECF No. 21 at 5); and

2. Whether the ALJ acted within a constitutional delegation of authority, (id. at 24).

/ / /

---

[3] "Medium work" is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence in the record and contain no legal error.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  However, the reviewing court "may not reverse an ALJ's decision on account of an error that was harmless."  Molina, 674 F.3d at 1111.

## V.  DISCUSSION

**A.    The ALJ Did not Err in his Evaluation of Dr. Veerinder Anand's Opinions**

As detailed below, Plaintiff's treating doctor Veerinder Anand, M.D. offered multiple opinions about Plaintiff's abilities in the medical record.  The ALJ discussed the persuasiveness of two of those opinions, one from February 2018 and another from

May 2020. (AR 25.) Plaintiff argues that while the ALJ provided specific reasons for rejecting Dr. Anand's May 2020 opinion, he did not sufficiently explain his rejection of certain portions of the February 2018 opinion as unpersuasive, specifically restrictions on lifting and carrying and those related to bending and stooping. (ECF No. 21 at 7-13.) Respondent contends that the ALJ's explanation for finding the 2018 and 2020 opinions unpersuasive, "complied with the regulations, and met the substantial evidence standard of review." (Id. at 14.)

### 1. Dr. Anand's opinions and the ALJ's treatment thereof

Dr. Veerinder Anand began treating Plaintiff in July 2017 in connection with his worker's compensation claim resulting from his April 7, 2017 workplace injury, and continued to treat him until at least March 16, 2020. (See AR 292-337, 425-28, 458-61, 462.) At his initial evaluation on July 26, 2017, and follow up appointments on September 20, October 17, and November 15, 2017, Dr. Anand examined Plaintiff's neck, back and hips, spent at least twenty-five minutes face-to-face with Plaintiff, and indicated in the "Disability Status" section, under a "Work related injury" heading, that Plaintiff was "Temporary Total Disabled." (AR 293-96, 299-302, 305-07, 313-16.) Though Dr. Anand did not list any specific work restrictions in the medical records of these visits, he did complete a checkbox-style Work Status Report after each visit, which directed the doctor to return the report to "the Employer, Claims Administrator, and/or Nurse Case Manager" for Plaintiff's worker's compensation claim on each of these first four visits. (AR 353-56.) The first such report indicated Plaintiff could perform only sedentary work and the remaining three stated he could not work at all. (Id.)

At the next three follow-up appointments on December 13, 2017, January 16, 2018, and February 13, 2018, Dr. Anand again spent more than 25 minutes with Plaintiff, examined his neck, back and hips, and sometimes his upper extremities, and indicated Plaintiff was "Temporary Partial Disabled." (AR 319-21, 328, 335.) Dr. Anand filled out a Work Status Report on December 13, 2017, indicating Plaintiff was restricted to semi-sedentary work without indicating any further restrictions. (AR 352.) On

February 13, 2018, Dr. Anand also reported in his treatment notes that Plaintiff had reached maximum medical improvement and imposed the following work restrictions: lifting no more than thirty pounds, doing only ground-level work, and not sitting more than one hour a time, and no more than four hours total. (AR 335.) Also on February 13, 2018, Dr. Anand indicated in another check-box style Work Status Report that Plaintiff was restricted to moderate lifting and carrying of fifteen to fifty pounds, moderate bending and stooping of six to ten times per hour, and moderate pushing and pulling of twenty-five to fifty pounds. (AR 350.) Dr. Anand also selected "sitting job only," and specified that Plaintiff could sit for one hour at a time, and for a total of four hours. (AR 350.)

After Plaintiff's workers' compensation case closed in 2018, Dr. Anand examined Plaintiff at further office visits on September 4 and December 16, 2019, and on March 16, 2020. (See AR 425-32, 458-61.) At each of these visits, Dr. Anand again examined Plaintiff's neck, back, and hips. (Id.) On May 11, 2020, Dr. Anand completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (AR 462-63.) The form only indicated that Plaintiff had been seeing Dr. Anand from September 4, 2019, through March 16, 2020. (See AR 462.) Based on physical examination findings and Plaintiff's reported symptoms, Dr. Anand opined that Plaintiff could only sit or stand for one hour each per workday, he could never do any lifting, carrying, bending, squatting, crawling, climbing, or reaching. (AR 463.)

In the ALJ's decision, he summarized Dr. Anand's opinions from his July and September of 2017 treatment notes and the results of imaging and testing ordered by Dr. Anand. (AR 23.) He then noted Dr. Anand's opinions of total temporary disability between July and November 2017, and his December 2017 assessment that Plaintiff could do semi-sedentary work. (AR 23, 24.) Finally, he addressed Dr. Anand's February 2018 Work Status Report and May 2020 Medical Source Statement:

> []Dr. Anand's opinion is significantly more restricting than the record supports. As discussed above in detail, the treatment notes do not

> consistently reveal significant objective findings that would support the degree of limitations found by Dr. Anand. Dr. Anand's May 2020 opinion that the claimant is unable to lift and/or carry any weight is inconsistent with his February 2018 opinion, when he found that the claimant is able to lift and/or carry 15 to 20 pounds. [Citation.] A change in opinion such as this would be acceptable if the objective medical evidence showed a change in the claimant's condition that would explain the difference. However, a close inspection of the medical evidence in this matter, including Dr. Anand's own treatment notes, fails to show any change in the claimant's objective findings on examination or diagnostic testing. The claimant's conservative treatment also do [sic] not lend support to the degree of limitations found by Dr. Anand. [Citation.] Accordingly, the undersigned finds Dr. Anand's May 2020 opinion [citation] highly over-restrictive and not persuasive at all. Dr. Anand's earlier February 2018 opinion [citation], while less extreme, is also overly restrictive and unpersuasive, given the objective evidence in the longitudinal record, and the other, more persuasive opinion evidence discussed below.

(AR 25.) The ALJ went on to discuss two prior administrative medical findings from state consulting physicians, which found that Plaintiff could perform medium work with some specific non-exertional limitations. (Id.) The ALJ concluded that those opinions were "generally persuasive and generally in accord with the objective medical evidence and examination findings on file." (Id.) The ALJ ultimately credited Plaintiff's subjective complaints to the extent they were consistent with the objective medical evidence and fashioned an RFC at "medium exertional level with somewhat greater nonexertional limitations overall." (Id.)

### 2. Applicable law

Plaintiff filed for disability after March 27, 2017. (See AR 176-77 (Application Summary for Disability Insurance Benefits, dated April 29, 2019).)[4] Therefore, the Social Security Administration's revised regulations for considering medical opinions and prior administrative medical findings apply. See 20 C.F.R. § 404.1520c (2017). Under the revised regulations, an ALJ must evaluate the persuasiveness of any medical opinion and

---

[4] The Application summary references completion of the application on April 29, 2019, however other documents in the record from the Social Security Administration refer to Plaintiff's application as being completed "April 25, 2019." (See AR 19, 134, 141, 176-77.)

articulate his or her assessment as to each. Id. Where a single doctor provides multiple medical opinions, the regulations contemplate that the ALJ will perform just one analysis of that source's opinions and not "articulate how [he] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating persuasiveness, an ALJ must consider the medical opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. Id.; 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ must discuss the two most important factors, supportability and consistency, in a written decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability" measures the degree to which objective medical evidence and supporting explanations buttress a medical finding. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). "Consistency" is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources in the record. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). The more relevant the objective evidence and supporting explanations are to support the medical source, and the more consistent the source is with other evidence in the record, the more persuasive the medical opinion will be. See Zhu v. Comm'r of Soc. Sec., No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021); 20 C.F.R. § 404.1520c(c)(1)-(2).

The new regulations explicitly reject the treating physician rule previously employed by the Social Security Agency, which automatically gave greater weight to the medical opinions of treating physicians, required clear and convincing reasons for rejecting an uncontradicted medical opinion of a treating physician, and required specific and legitimate reasons supported by substantial evidence in the record for rejecting the contradicted medical opinion of a treating physician. Woods v. Kijakazi, 32 F.4th 785, 789-92 (9th Cir. 2022). No longer is an ALJ required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s)." 20 C.F.R. § 404.1520c(a). It follows that the new

regulations are "clearly irreconcilable with [Ninth Circuit] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." Woods, 32 F.4th at 792.

However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Id. ALJs must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence. Titus L.S. v. Saul, No. 2:20-cv-04825-AFM, 2021 WL 275927 (C.D. Cal. Jan. 26, 2021); see Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020); Zhu, 2021 WL 2794533, at *6 (applying the substantial evidence standard under the new 2017 regulations). The Ninth Circuit has indicated that ALJs should attempt to use these terms "with precision." Woods, 32 F.4th at 793 n.4.

### 3. Analysis

Plaintiff does not take issue with how the ALJ articulated his conclusion that Dr. Anand's 2020 opinion was not persuasive. He specifically explains that "the ALJ focused the majority of his reasoning on rejecting Dr. Anand's subsequent and more restrictive 2020 opinion rather than Dr. Anand's February 2018 opinion." (ECF No. 21 at 7.) Plaintiff acknowledges that the ALJ found Dr. Anand's February 2018 and 2020 opinions inconsistent, despite Dr. Anand's objective findings on examination and diagnostic testing failing to show any changes to support Dr. Anand's significantly more restrictive 2020 opinion. (Id. at 8.) Instead, Plaintiff's contention is that the ALJ erred by not also providing sufficient justification for finding the "less extreme" February 2018 opinion, "also overly restrictive and unpersuasive." (Id. at 8-9.) Defendant argues that the reasons the ALJ gave for rejecting Dr. Anand's February 2018 opinion, "lack of objective support and inconsistency with the record[,] addressed the two key factors that the ALJ had to consider when evaluating Dr. Anand's opinions." (Id. at 15.) Specifically, Defendant points to the ALJ's explanation that "objective evidence in the longitudinal

record" and "other, more persuasive opinion evidence" supported his conclusion that Dr. Anand's February 2018 opinion was "also overly restrictive and unpersuasive." (Id. at 15 (citing AR 25, 350-51, 462-63).)

At the outset, the Court notes that as Plaintiff argues in his reply, it is unclear from the ALJ's decision how he evaluated Dr. Anand's February 2018 lifting and carrying or bending and stooping restrictions, which Plaintiff claims he improperly rejected. (See id. at 23-24.) Dr. Anand appears to have rendered two contradictory indications on February 13, 2018 regarding Plaintiff's lifting and carrying restrictions. Dr. Anand indicated on his Work Status Report that Plaintiff could lift and carry moderate weight of fifteen to fifty pounds, while in his notes from February 13, 2018, he stated Plaintiff could lift no greater than thirty pounds. (AR 350, 335.) While the ALJ's RFC indicates that he determined Plaintiff could lift at the moderate level, because the ALJ did not specifically discuss Dr. Anand's thirty-pound lifting restriction in his opinion, it is not explicitly clear whether he overlooked this inconsistency (as argued by Plaintiff) or resolved it (as argued by Respondent). (See AR 22, 25; ECF No. 21 at 8-9 (Plaintiff's argument), 19-21 (Defendant's argument)); see also 20 C.F.R. § 404.1567(c) (defining medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"). Similarly, because the ALJ incorrectly recited Dr. Anand's bending and stooping restriction as "five to 10 hours," it is unclear whether he considered Dr. Anand's actual opinion that Plaintiff could bend and stoop at the moderate level of six to ten times an hour. (Compare AR 25 with AR 350.)

However, under the new regulations, "the ALJ is not required to identify every opinion from every source when passing judgment on the source." Gentry v. Kijakazi, Case No. 20-cv-05814-SVK, 2022 WL 1601413, at *5 (N.D. Cal. Mar. 31, 2022) (citing 20 C.F.R. § 416.920c(b)(1)). Where an ALJ's source level analysis provides substantial evidence for finding a specific opinion unpersuasive, the ALJ does not err by not discussing the specific opinion. See, e.g., id. at *4-*5 (finding no error in the ALJ's failure

to discuss a more restrictive opinion, when the ALJ's decision to reject a less restrictive one was supported by substantial evidence); <u>Michelle W. v. Kijakazi</u>, Case No. 1:20-CV-00572-REP, 2022 WL 1991973, at * (D. Idaho June 6, 2022) (approving the ALJ's rejection of a doctor's "interim and evolving restrictions" as unpersuasive and his adoption of the same doctor's final opinion as persuasive, where the earlier opinions were based on the plaintiff's "subjective complaints, while [the] final opinion was issued after [the plaintiff] underwent a comprehensive functional capacity evaluation").

The ALJ's articulated reason for finding Dr. Anand's 2020 opinion unsupported and inconsistent is supported by substantial evidence. On February 13, 2018, and each of Plaintiff's subsequent three appointments with Dr. Anand, Plaintiff's neck examination consistently showed tenderness around vertebra C5 and C6, decreased range of motion within 5 degrees between visits on flexion, extension, and lateral bend, and normal power of 5/5.[5] (<u>See</u> AR 333-34, 426-27, 458-59, 429-30.) While Plaintiff experienced pain and difficulty when performing heel/toe and squat/duck walks in February 2018, he performed the same tests within normal limits on his visits with Dr. Anand in 2019 and 2020. (AR 334, 425, 459, 430.) Dr. Anand's physical examinations of Plaintiffs' hips and back in February 2018 revealed tenderness at vertebra L4 and L5, positive and painful straight leg raises bilaterally at 70 degrees, and a decreased range of motion by twenty degrees on flexion and five to ten degrees on extension, rotation, and lateral bend, but 5/5 strength. (AR 334.) At appointments in 2019 and 2020, Dr. Anand observed tenderness at vertebra L5 and S1, positive straight leg raises at 70 degrees on the left side and 90 degrees on the right side, and while his range of motion was still similarly restricted on flexion and extension, it was normal on rotation, and fluctuated between improved and ten degrees worse on lateral bend. (AR 425-26, 459-60, 430-31.) Plaintiff retained 5/5 strength in his back and hips. (<u>Id.</u>) Finally, Dr. Anand did not review any new imaging between February 2018 and March 2020. (<u>Compare</u> AR

---

[5] The Court notes that Dr, Anand noted positive results on Plaintiff's Spurling test on February 13, 2018, but appears not to have conducted this test on subsequent visits. (<u>See</u> AR 333, 427, 459, 430.)

335 with AR 431.) Reviewing this and other medical evidence in the record, the ALJ was correct to find that the inconsistency between Dr. Anand's 2018 and 2020 opinions was not supported by the objective medical evidence.

Furthermore, the significant lack of support for and the inconsistent nature of Dr. Anand's 2020 opinion (that Plaintiff could never lift or carry any weight, or bend, squat, crawl, climb any stairs, ramps, ladders, or scaffolds, or reach in any direction) impacts Dr. Anand's reliability, generally. (See AR 462-63.) After such a finding, it would be inefficient and inconsistent with the new regulations' statement that the agency is "not required to articulate how we considered each medical opinion . . . from one medical source individually," to require an ALJ to specifically detail supportability and consistency for every other opinion rendered by the same doctor. 20 C.F.R. § 404.1520c(b)(1).

There is also substantial evidence in the record to support a similar finding of inconsistency regarding the February 2018 treatment notes listing the thirty-pound lifting requirement. (AR 335.) Specifically, it is contradicted by Dr. Anand's Work Status Report completed on the same date, wherein he indicated that Plaintiff could lift fifteen to fifty pounds. (AR 350.) The Court is not persuaded by Plaintiff's argument that Dr. Anand's treatment notes were intended to modify the checkbox style Work Status Report. (See ECF No. 21 at 6-9.) First, the two documents are clearly separate, and nowhere in the Work Status Report does Dr. Anand refer to his treatment notes. (See AR 331-37, 350.) Second, Dr. Anand completed the Work Status Report by hand, in his own handwriting. (See AR 350.) Because of this, he could have added notes or changed the weight range to reflect Plaintiff's accurate restrictions. As Defendant points out, Dr. Anand did exactly that when he added a note in the right margin next to his opinion regarding Plaintiff's sitting limitations, to reflect the total number of hours he believed Plaintiff could sit per day, despite the form not providing a space for that information. (AR 350, ECF No. 21 at 20-1.) Dr. Anand's inconsistent opinions, rendered on the same

date, support the ALJ's inconsistency finding as to Dr. Anand's 2018 opinion that he could lift no more than thirty pounds.

The ALJ also explained that he found Dr. Anand's opinion unpersuasive due to "other, more persuasive opinion evidence, discussed below." (AR 25.)  This refers to the opinions of the state agency medical consultants, Dr. J. Hartman and Dr. K. Sin, who in relevant part, both found that Plaintiff could lift fifty pounds occasionally and twenty five pounds frequently, consistent with the medium exertional level.[6]  (Id., AR 77, 88.)  Plaintiff argues that "consistency with the medical opinions that the ALJ finds more persuasive is not the standard by which to judge the persuasiveness of medical opinion." (ECF No. 21 at 9.)  He claims if that were permitted, "the agency could perpetually find treating opinions unpersuasive when they conflict with the examining and reviewing opinions promulgated by the agency." (Id. (citing 20 C.F.R. § 404.1520c(c)).)  Defendant counters that Plaintiff's position is "inconsistent with the applicable regulations that treat non-examining source opinions as equal to treating or examining source opinions." (Id. at 17.)

As Defendant claims, the new regulations do not "defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  While ALJs must consider the medical expert's relationship to the claimant, and other factors, such as whether the expert is familiar with the other evidence in the claim and disability policies and evidentiary requirements, (20 C.F.R. § 404.1520c(c)), an ALJ is only required to discuss them when two opinions "about the same issue are both equally well-supported[] and consistent with the record." (20 C.F.R. § 404.1520c(b)(3).)  The Court recognizes that there are times when the state consulting physicians will be less persuasive, or on similar footing with treating physicians, based on consistency and supportability.  See, e.g., M.P. v. Kijakazi, Case No. 21-cv-03632-SVK, 2022 WL 1288986, at * 3-*6 (N.D. Cal.

---

[6] Medium work permits occasional lifting of up to fifty. SSR 83-10, 1983 WL 31251, at *6.

Apr. 29, 2022) (finding the treating physician's opinion at least as supportable and consistent with the record as the agency's consulting physician where the treating physician's opinion was "internally consistent, supportable, and consistent with the record" and consistent with the opinions of three treating orthopedists).  However, here the ALJ was faced with two inconsistent opinions rendered by Dr. Anand on February 13, 2018.  In choosing between them, it was reasonable to select the opinion that was consistent with the only two other medical experts who offered opinions in this case.  The record does not contain any other conflicting opinions.  Therefore, in this case, the Court finds that inconsistency with two similar agency consultant opinions further supports the ALJ's inconsistency finding.

Finally, the Court addresses Plaintiff's argument related to limitations on Plaintiff's ability to bend and stoop.  Plaintiff argues that Dr. Anand's February 2018 opinion restricting Plaintiff to bending and stooping 6-10 times per hour is more restrictive than the ALJ's RFC of medium work, with the ability to "frequently balance, kneel, stoop or crouch."  (ECF No. 21 at 12-13; compare AR 22 with AR 350.)  Because the Court finds that the ALJ was not required under the new regulations to specifically explain his rejection of Dr. Anand's February 2018 opinions, the ALJ did not err by not explaining any such rejection here.

Moreover, the Court is not persuaded by Plaintiff's interpretation of Dr. Anand's opinion.  The form Dr. Anand completed provided bending and stooping options of (a) light, defined as zero to six times per hour, (b) moderate, defined at six to ten times per hour, and (c) heavy, defined as more than ten times per hour.  (AR 350.) SSR 83-10 defines "terms and concepts frequently used in evaluating disability under the medical-vocational rules." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983), 1983 WL 31251.  Below a discussion of sedentary work, the SSR provides that "'occasionally' means occurring from very little up to one-third of the time." Id. at *5.  Below a discussion of light work, the SSR explains that "'frequent' means occurring from one-third to two-thirds of the

time." Id. at 6. Plaintiff claims that six to ten times per hour should be considered occasional, while Defendant argues it should be considered frequent. (See ECF No. 21 at 12-13, 21.) Both parties argue their positions about the frequency solely based on Social Security Ruling 83-10 ("SSR 83-10"). (See ECF No. 21 at 12-13, 21.) Considering that neither party has cited any authority, it is not evident that six to ten times per hour is more consistent with "occasional" than with "frequent."

For the reasons discussed, the Court finds that the ALJ did not err in his consideration of Dr. Anand's medical opinions.

### B. Plaintiff is Not Entitled to Rehearing Due to an Unconstitutional Delegation of Authority

Plaintiff argues that he is entitled to a new hearing on his disability benefits claim because the "pertinent decisional facts" of this case "occurred under an unconstitutional delegation of authority." (ECF No. 21 at 25.) Specifically, Plaintiff argues that the statute governing the removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), which prescribes removal only for good cause, violates separation of powers. (See id.) Plaintiff contends that "[b]ecause of the intervening authority of the unconstitutional office of the Commissioner, the ALJ in this case was not subject to sufficient accountability." (Id. at 43.) Plaintiff further asserts that ALJ Delphey was insulated by two-layered removal, which "adds another constitutional defect" to the analysis of his disability claim. (Id.)

Defendant concedes that § 902(a)(3) is unconstitutional but argues that Social Security ALJs are not improperly insulated from removal by two-layered protection. (Id. at 27, 40.) Defendant also contends that even if the ALJ was improperly insulated, Plaintiff is not entitled to a rehearing of his disability claim because there is no nexus between the removal restriction and any "compensable harm." (Id. at 29, 31.) Alternatively, Defendant asserts that Plaintiff's rehearing request should be denied under the doctrines of harmless error, de facto officer, the rule of necessity, and broad prudential concerns. (Id. at 37.)

In a decision that followed the parties' briefing to this Court, the Ninth Circuit issued an opinion affirming the parties' position that "[t]he removal provision [applicable to the Commissioner] violates separation of power principles." Kaufmann v. Kijakazi, 32 F.4th 843, 849 (9th Cir. 2022). The Court reached this decision by applying Supreme Court precedent that "the Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." Id. at 848 (citing Collins v. Yellin, 141 S.Ct. 1761, 1787 (2021) and Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2205 (2020)). The Ninth Circuit further held that "the removal provision is severable from the remainder of the statute." Kaufmann, 32 F.4th at 849. Because the remainder of the statute continues to operate, the appointment remains valid and "the unconstitutional removal provision 'does not affect the authority of the underlying agency officials to act.'" Maria R. v. Kijakazi, Case No.: 20-cv-01236-MMA-JLB, 2022 WL 1800751, at *10 (S.D. Cal. June 2, 2022) (citing Kaufmann, 32 F.4th at 849).

Plaintiff does very little to set forth his constitutional argument premised on "two-layered removal." (See ECF No. 21 at 25-26, 43-43.) Specifically, Plaintiff does not explicitly identify which two removal protection mechanisms he alleges violate the constitution in this instance, or why they do so. (Id.) Based on the Plaintiff's attempts to distinguish ALJs within the Social Security Administration from those in the Department of Labor, whose removal restrictions the Ninth Circuit held to be constitutional in Decker Coal Company v. Pehringer, 8 F.4th 1123, 1136 (9th Cir. 2021), the Court can only guess about the "two-layer" removal scheme that Plaintiff refers to. The Court in Decker described the removal protections applicable to ALJs. Id. at 1129-30. ALJs can be removed for "good cause established and determined by the Merit Systems Protection Board" ("MSPB"). 5 U.S.C. § 7521(a)-(b). A member of the MSPB, in turn, may be "removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202. To the extent he articulates this argument, the Plaintiff asserts what distinguishes the ALJ who ruled against him from Department of

Labor ALJs is the fact that "Commissioner Saul was not removable at the pleasure of the President." (ECF No. 21 at 25.)

Because Plaintiff did not bother to explain his argument or identify the removal protections that he claims violate the constitution, the Court finds Plaintiff has not properly presented this argument. See, e.g., Jackson v. Kijakazi, Case No. 2:20-cv-02236-CSD, 2022 WL 716810, at *7 (D. Nev. Mar. 10, 2022) (finding the plaintiff had not properly presented the argument where a similar argument "provide[d] no explanation as to why two-layered removal is unconstitutional"). In any event, because Ninth Circuit has already held that the "President possesses the authority to remove the Commissioner of Social Security at will," the distinction Plaintiff argues no longer exists. See Kaufmann, 32 F.4th at 849.

For the sake of analyzing whether Plaintiff is entitled to any remedy, the Court assumes, as Plaintiff alleges and Defendant does not contest, Andrew Saul was the Commissioner, subject to unconstitutional removal protections, both when the ALJ issued his unfavorable decision and when the Appeals Council denied review. (ECF No. 24-25, 27.) Nothing about the unconstitutional removal provision impacts the validity of Commissioner Saul's appointment. Kauffman, 32 F.4th at 849. ALJ Delphey was validly appointed. (ECF No. 21 at 43.) Contrary to Plaintiff's arguments, where removal protections of a validly appointed executive officer are found to violate the separation of powers, that officer's actions "are not automatically rendered void." Standifird v. Kijakazi, No. 3:20cv1630-JO-BLM, 2022 WL 970741, at *3 (S.D. Cal. Mar. 31, 2022) (citing Decker, 8 F.4th at 1136-37). "[A] plaintiff seeking retrospective relief on the grounds of a removal restriction must demonstrate a nexus between the removal restriction and 'compensable harm.'" Id. (quoting Collins v. Yellen, 141 S. Ct. 1761, 1789 (2021)). Plaintiff is only entitled to relief if he can show the denial of his disability claim is connected to the removal restriction. Collins, 141 S. Ct. at 1789 (providing examples of compensable harm such as where the President attempts to remove a director and is prevented from doing so).

Plaintiff has not demonstrated a nexus between the removal restrictions and any compensable harm. Plaintiff argues that President Biden's apparently delayed removal of Commissioner Saul despite the White House's criticisms of him demonstrates a harm caused by the removal restriction. (See ECF No. 21 at 44-46.) But, as Defendant correctly points out, President Biden did not take office until after administrative proceedings in this case concluded. (See id. at 34.) The title of one article cited by Plaintiff suggests that the preceding president did not share President Biden's views: "Biden fires head of Social Security Administration, a Trump holdover who drew the ire of Democrats." (Id. at 45.) Plaintiff has made no showing that the President in office at the relevant time was unhappy with Commissioner Saul or ALJ Delphey. Plaintiff "has presented neither evidence nor a plausible theory to show that the removal provision caused [him] any harm." Kauffman, 32 F.4th at 849-50; see also Jackson, 2022 WL 716810, at * 6 ("Plaintiff's speculation about the delay between the OLC memo and Saul's termination does not come close to the example of specific harm the Supreme Court discussed in Collins. . . . Plaintiff does not provide evidence of any link between the unconstitutional removal provision and her unfavorable disability determination.").

## VI.  CONCLUSION AND RECOMMENDATION

The Court finds that the ALJ did not err in his evaluation of Dr. Anand's multiple medical opinions.

Though the Ninth Circuit has severed the unconstitutional removal restrictions placed on the Commissioner by statute, the Court finds that Plaintiff has not demonstrated a sufficient nexus between those, or any, removal provisions and any compensable harm.

For the foregoing reasons, the Court **RECOMMENDS** that Judgment be entered affirming the ALJ's decision.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. See Fed. R. Civ. P.

72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. See id.

**IT IS SO ORDERED.**

Dated: July 29, 2022

Honorable Michael S. Berg
United States Magistrate Judge